**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMES MCKINNEY,

      Petitioner,

v.

                             CASE NO. 2:13-CV-15284
                             HONORABLE MARIANNE O. BATTANI
                             UNITED STATES DISTRICT JUDGE

BONITA HOFFNER,

      Respondent.

_____/

## OPINION AND ORDER CONDITIONALLY GRANTING
## THE PETITION FOR WRIT OF HABEAS CORPUS

      James McKinney, ("Petitioner"), presently confined at the Lakeland Correctional Facility in Coldwater, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [1]  In his application, filed by attorney Valerie R. Newman of the State Appellate Defender's Office, petitioner challenges his conviction for first-degree premeditated murder, M.C.L.A. 750.316(a); unlawfully driving away an automobile, M.C.L.A. 750.413; and felony firearm, M.C.L.A. 750.227b.  For the reasons stated below, the application for writ of habeas corpus is **CONDITIONALLY GRANTED.**

---

      [1]  When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the St. Louis Correctional Facility, but has since been transferred to the Lakeland Correctional Facility.  The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. See Edwards v. Johns, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); See also Rule 2(a), 28 foll. U.S.C. § 2254. Therefore, the Court substitutes Bonita Hoffner in the caption.

## I. Background

On October 23, 2009, petitioner was arrested by the police in DeKalb County, Illinois during a traffic stop.  Police searched the van that petitioner was driving and recovered two handguns, a magazine cartridge and a wallet belonging to the murder victim, James Harper.  Petitioner was driving the victim's van when stopped.  Petitioner had lived with the victim for a period of time. Petitioner had lived with the victim, performing chores for the victim in lieu of paying rent.  The two men sometimes quarreled over the way in which petitioner did some of the jobs.  There was no evidence, however, of any bad blood between the two men.  Petitioner kept several guns in the basement of the victim's house, where he lived.  One of the firearms that was recovered from the van had been used to kill the victim. (Tr. I, pp. 100-01, 105-09, 113-15, 143, 178, 180, 182, 203, 213, Tr. II, pp. 235-38, 41).  Two detectives from the Hillsdale County Sheriff's Department came to Illinois and questioned petitioner about the victim, who was found dead from a gunshot to the head on October 24, 2009, the morning after the traffic stop. (Tr. I, p. 174).

Prior to questioning petitioner, Detective Hodshire of the Hillsdale County Sheriff's Department gave petitioner a form which advised him of his <u>Miranda</u> rights.  Petitioner signed the form and Detective Hodshire began questioning him. (<u>Id.</u>, p. 141).  During the interrogation, petitioner requested an attorney and in response, Detective Hodshire turned his questions towards the circumstances

2

surrounding the victim's death.  It was during this period of questioning that petitioner confessed to shooting the victim, but gave few details about a possible motive for the shooting. (Id., pp. 92-96).

Prior to trial, petitioner's counsel moved to suppress petitioner's confession on the ground that it had been obtained after petitioner had invoked his right to counsel.  Defense counsel argued that petitioner unequivocally requested counsel during the following exchange that took place during the interrogation:

Detective Hodshire: So, you know why I'm here to talk to you, right?

Mr. McKinney: Yeah, yeah.

Detective Hodshire: So, I'm here to get your side of the story of what happened and why.  Okay.  When we do investigations, we understand that things happen for certain reasons and some of those reasons we don't understand, in law enforcement, so that's why I wanted to talk with you today to get your side of the story of what happened.

Mr. McKinney: Well if you don't mind, I just as soon wait until I get a public defendant or whatever.

Detective Hodshire: Well that's fine, but like I said...

Mr. McKinney: We can talk over the other circumstances...

Detective Hodshire: And that's what I wanted to talk over, the circumstances behind it.  Do you understand what I mean?  We understand that things happen for reasons that aren't specifically clear to us or family members and I know your mom is concerned about what is going on as we stopped over in Lenawee County and talked to your mom and I guess you haven't seen her in a while?

Mr. McKinney: No.

Petitioner shortly thereafter made an incriminating statement.

The Hillsdale County Circuit Court granted the motion to suppress, finding that petitioner's confession was obtained in violation of <u>Miranda</u> because Detective Hodshire continued to interrogate petitioner after he invoked his right to counsel.4 (See Petitioner's Appendix A, Excerpt Transcript at 9-11; and Appendix B, Interrogation Transcript at 41-42.).

The Jackson County Prosecutor filed an interlocutory appeal.  The Michigan Court of Appeals upheld the trial court's suppression ruling.  The Michigan Court of Appeals concluded that petitioner's statement, "I just as soon wait until I get a public defender," was an unequivocal assertion of his right to counsel. <u>People v. McKinney</u>, No. 296455, 2010 WL 4226761, at *2 (Mich. Ct. App. Oct. 26, 2010).  Because petitioner had asserted his right to counsel unequivocally, the Michigan Court of Appeals concluded that "it was incumbent upon the officer at this point to cease all questioning unless defendant subsequently was provided with counsel or until he 'reinitiate[d] conversation.'" <u>Id.</u> (internal quotation omitted).  The Michigan Court of Appeals further concluded that Detective Hodshire's remarks following petitioner's invocation of his request for counsel amounted to impermissible continued interrogation:

> What makes this case somewhat unusual is the fact that Officer Hodshire and defendant spoke over each other during defendant's invocation of his right to counsel, and the immediate statement thereafter.  Nevertheless, when viewed in context, we agree with the trial court that defendant's statements made after he invoked his right to counsel must be suppressed.  First, the officer's response to defendant's assertion of his right to counsel was not a statement

4

related to ministerial or administrative concerns.  More specifically, after the officer told defendant, "Well that's fine"—a seeming innocuous response—he continued with the phrase, "but like I said...." And although the parties dispute the meaning of this language, it is clear in context that the phrase, "but like I said," was not a reference to defendant's vital statistics or "biographical data necessary to complete booking or pretrial services"

Second, the statement, "but like I said," can only refer to the officer's previous statement that his purpose was to "get [defendant's] side of the story," i.e., to continue the interrogation.  Viewed in this manner, the officer's statement constituted continued interrogation because the police should have known that the statement was "reasonably likely to elicit an incriminating response from the suspect."  Moreover, because defendant's concession to "talk about the other circumstances" was made only after the officer offered to continue the exchange, we conclude that it was the officer who reinitiated questioning rather than defendant.  Therefore, defendant's confession was obtained in violation of <u>Miranda</u>, and the trial court did not error in suppressing defendant's confession in its entirety.

<u>Id.</u> (Internal citations omitted).

The prosecutor filed an application for leave to appeal to the Michigan

Supreme Court.  In *lieu* of granting leave to appeal, the Michigan Supreme Court

peremptorily reversed the Michigan Court of Appeals:

The defendant's statement that he would "just as soon wait" until he had an attorney before talking to the police, followed immediately by his statement that he was willing to discuss the "circumstances," was not an unequivocal assertion of the right to counsel or a statement declaring an intention to remain silent.

<u>People v. McKinney</u>, 488 Mich. 1054, 794 N.W.2d 614, 615 (2011).

Justice Kelly indicated that she would have granted leave to appeal. <u>Id.</u>

Petitioner's confession was admitted at trial.  In light of the confession,

5

defense counsel did not dispute that petitioner killed the victim and took his van. Instead, counsel argued that petitioner's actions did not amount to premeditated murder.

Appellate counsel appealed as of right to the Michigan Court of Appeals, again challenging the admissibility of petitioner's statement. The Michigan Court of Appeals affirmed petitioner's conviction on the ground that it was bound by the prior ruling of the Michigan Supreme Court from the prosecutor's interlocutory appeal. People v. McKinney, 305093, 2012 WL 4039706 (Mich. Ct. App. Sept. 13, 2012); lv. den. 493 Mich. 940, 826 N.W.2d 729 (2013).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. MR. MCKINNEY'S WRIT OF HABEAS CORPUS SHOULD BE GRANTED BECAUSE THE MICHIGAN SUPREME COURT UNREASONABLY APPLIED CLEARLY ESTABLISHED FEDERAL LAW IN RULING THAT PETITIONER DID NOT UNAMBIGUOUSLY INVOKE HIS FIFTH AMENDMENT RIGHT TO COUNSEL DURING CUSTODIAL INTERROGATION.

II. THE USE OF MR. MCKINNEY'S UNCONSTITUTIONALLY ADMITTED CONFESSION HAD A SUBSTANTIAL EFFECT IN DETERMINING THE JURY'S VERDICT BECAUSE THE PROSECUTION HEAVILY RELIED ON THE CONFESSION SINCE THE OTHER EVIDENCE LINKING MR. MCKINNEY TO THE CRIME WAS SLIGHT.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

6

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

### III. Discussion

The Court grants petitioner a writ of habeas corpus, because the police violated his constitutional rights by obtaining his confession from him after he had clearly and unequivocally invoked his right to counsel.

7

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

> 1. the person must be warned that he has a right to remain silent;
> 2. that any statement he does make may be used against him;
> 3. and that he has a right to the presence of an attorney, either appointed or retained.

Miranda, 384 U.S. at 444.

When an accused invokes his right to counsel during custodial interrogation, that interrogation must cease until counsel is made available, unless the accused initiates further conversation with the police. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). The rule in Edwards is considered "a corollary to Miranda's admonition that '[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present.'" Arizona v. Roberson, 486 U.S. 675, 680 (1988)(quoting Miranda, 384 U.S. at 474). The rationale behind Edwards is that once the accused informs law enforcement officials "he is not capable of undergoing [custodial] questioning without advice of counsel," "any subsequent waiver that has come at the authorities' behest,

8

and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect." Maryland v. Shatzer, 559 U.S. 998, 104-05 (2010)(quoting Roberson, 486 U.S. at 681). Indeed, "to a suspect who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever compulsion to speak the suspect may be feeling." Roberson, 486 U.S. at 686.

However, the "[i]nvocation of the Miranda right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" Davis v. United States, 512 U.S. 452, 459 (1994) (quoting McNeil v. Wisconsin, 501 U.S. 171, 178 (1991)). The suspect's statement "must unambiguously request counsel." Id. at 459. A criminal suspect therefore must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis, 512 U.S. at 459.

Petitioner clearly and unequivocally invoked his right to counsel when he stated "I just as soon wait until I get a public defendant or whatever." In Kyger v. Carlton, 146 F. 3d 374, 379 (6th Cir. 1998), the Sixth Circuit held that a habeas petitioner's statement "I'd just soon as have a attorney" amounted to an

9

unequivocal and unambiguous request for counsel and that any further police questioning should have stopped.

The Michigan Supreme Court unreasonably concluded that petitioner's request for counsel was equivocal because after indicating that he'd "just as soon wait" until he had an attorney before talking to the police, petitioner immediately stated that he was willing to discuss the "circumstances" with the police. The Michigan Supreme Court, however, unreasonably ignored the fact that petitioner made this second statement only after the detective responded to his unequivocal request for counsel by stating "Well that's fine, but like I said...". "Under Miranda and Edwards...an accused's postrequest responses to further interrogation may not be used to cast doubt on the clarity of his [or her] initial request for counsel." Smith v. Illinois, 469 U.S. 91, 92 (1984). The fact that petitioner continued to answer questions after unambigously and unequivocally requesting the assistance of counsel "may not be used to cast retrospective doubt on the clarity of the initial request itself." Id., at 97; See also Wood v. Ercole, 644 F.3d 83, 92, n. 8 (2nd Cir. 2011)("events occurring minutes after an unequivocal invocation of counsel are irrelevant: all interrogation must stop until counsel is provided or conversation is reinitiated by the suspect").

Petitioner clearly and unambiguously invoked his right to counsel when he stated that "I just as soon wait until I get a public defendant or whatever." At that point, the officer should have ceased questioning petitioner. Detective

10

Hodshire's subsequent remarks to petitioner were an inappropriate effort at pressuring petitioner to make an incriminating statement, rather than an appropriate attempt to get petitioner to clarify whether he wished to invoke his right to counsel. Kyger, 146 F. 3d at 379.  The detective's continued interrogation of petitioner after he unequivocally asked for counsel amounted to an inappropriate attempt to pressure him and thus violated his Miranda rights. Id.

Respondent argues that Detective Hodshire's remark "Well that's fine, but like I said . . ." did not amount to interrogation, thus, petitioner's subsequent remark that they could "talk over the other circumstances" evinced a willingness on petitioner's part to reinitiate the interrogation that was not prompted by any improper interrogation on the detective's part.

The special procedural safeguards outlined in Miranda are required not merely when a suspect is taken into custody, but instead where a suspect in custody is subjected to interrogation. Rhode Island v. Innis, 446 U.S. 291, 300 (1980).  "'Interrogation', as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." Id. Miranda warnings are required whenever a person in custody is subject either to express questioning or its "functional equivalent." Rhode Island v. Innis, 446 U.S. at 300-01.  Thus, for Miranda purposes, the term "interrogation" refers not only to express questioning of a suspect by law enforcement officials, but also to "any words or actions on the part of the police (other than those normally attendant to

11

[an] arrest or custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301.  Non-interrogative interactions between police and suspects do not violate Miranda or Edwards. See Montejo v. Louisiana, 556 U.S. 778, 795 (2009).

Questions that that are "reasonably related to the police's administrative concerns," such as a defendant's name, address, height, weight, eye color, date of birth and current address, do not constitute interrogation, for purposes of Miranda. Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990); See also United States v. Clark, 982 F. 2d 965, 968 (6th Cir. 1993)("ordinarily ... the routine gathering of biographical data for booking purposes should not constitute interrogation under Miranda ").  Detective Hodshire's response to petitioner's unequivocal request for counsel, however, was not a statement related to an administrative police function.  Nor was it of "casual conversation" that does not rise to the level of interrogation. See e.g. United States v. Thomas, 381 Fed.Appx. 495, 502 (6th Cir.2010).

Instead, Detective Hodshire's statement, "Well that's fine, but like I said.." after petitioner invoked his right to counsel clearly related back to the detective's previous statement that he wished to get petitioner's side of the story and thus was clearly designed to elicit an incriminating response from petitioner.  The sequence and substance of Detective Hodshire's statement, when taken in context, suggest that he had no purpose other than to persuade petitioner to

12

resume the interrogation after he invoked his right to counsel and thus amount to the functional equivalent of interrogation on the murder investigation. See <u>State v. Kerby</u>, 162 Ohio App. 3d 353, 369, 833 N.E.2d 757, 769 (Ohio Ct. App. 2005). Stated differently, within the context of Detective Hodshire's prior statement that he wanted to get petitioner's side of the story, Hodshire's reply to petitioner's invocation of his right to counsel "Well, that's fine, but like I said.." was an "explicit invitation" to petitioner to make an incriminating response and was thus improper in light of petitioner's prior request for counsel. See <u>State v. Juranek</u>, 287 Neb. 846, 855, 844 N.W.2d 791, 801 (Neb. 2014).  Because Detective Hodshire's remarks amounted to continued interrogation after petitioner had unequivocally invoked his right to counsel, petitioner's subsequent confession was obtained in violation of <u>Miranda</u> and <u>Edwards.</u>

In the present case, respondent did not argue in his answer that any error here was harmless.  "The harmless error defense can be waived." <u>Lovins v. Parker</u>, 712 F.3d 283, 303 (6th Cir. 2013)(citing <u>United States v. Johnson</u>, 467 F.3d 559, 564 (6th Cir. 2006)).  By failing to argue in his answer that the error was harmless, respondent has waived any harmless error defense to petitioner's claim. <u>Id.;</u> See also <u>Miller v. Stovall</u>, 608 F. 3d 913, 926 (6th Cir. 2010)(state waives harmless error on federal habeas review when it fails to raise the issue in its response to the habeas petition in federal district court); <u>rev'd on other grds</u> 132 S. Ct. 573 (2011).

13

Moreover, as petitioner's counsel argues in her brief, the admission of petitioner's confession was not harmless.  Harmless-error analysis applies to coerced or involuntary confessions. Arizona v. Fulminante, 499 U.S. 279, 295 (1991).  In Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.

The U.S. Supreme Court has repeatedly emphasized that confessions are like no other type of evidence and they are likely "the most probative and damaging evidence that can be admitted against a criminal defendant, so damaging that a jury should not be expected to ignore it even if told to do so." Fulminante, 499 U.S. at 296; Bruton v. United States, 391 U.S. 123, 139 (1968)(White, J. dissenting)).  A defendant's confession, unlike statements concerning only isolated aspects of a crime, "'may tempt the jury to rely upon that evidence alone in reaching its decision." Fulminante, 499 U.S. at 296.

Petitioner was convicted of first degree premeditated murder.  The prosecutor must prove that a defendant's intentional killing of another was deliberated and premeditated to obtain a conviction for first-degree murder. See Scott v. Elo, 302 F. 3d 598, 602 (6th Cir. 2002)(citing People v. Schollaert, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)).  The elements of premeditation

14

and deliberation may be inferred from the circumstances surrounding the killing.

See Johnson v. Hofbauer, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(citing

People v. Anderson, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)).

Premeditation may be established through evidence of the following factors:

> 1. the prior relationship of the parties;
> 2. the defendant's actions before the killing;
> 3. the circumstances of the killing itself;
> 4. the defendant's conduct after the homicide.

Cyars v. Hofbauer, 383 F. 3d 485, 491 (6th Cir. 2004); Anderson, 209 Mich. App. at 527.

As petitioner's counsel notes in her brief, there was virtually no evidence, apart from petitioner's confession, to establish the elements of premeditation and deliberation, so as to sustain his first-degree murder conviction.  There were no eyewitnesses to the murder.  There were no witnesses who testified as to any possible motive that petitioner might have had for killing the victim.  No witnesses testified as to any prior planning by petitioner with regards to the murder.  Without petitioner's confession, there was little evidence establishing the elements of premeditation and deliberation.

When a federal court judge in a habeas proceeding is in "grave doubt" about whether a trial error of federal constitutional law had a substantial and injurious effect or influence in determining the jury's verdict, the error is not harmless and the petitioner must win. O'Neal v. McAninch, 513 U.S. 432, 436 (1995).  Only if a federal habeas court can say with certainty that a trial error had

15

little or no impact on the judgment, should the judgment stand. See <u>Barker v.</u> <u>Yukins</u>, 199 F. 3d 867, 874 (6th Cir. 1999).  In light of the circumstantial nature of this case, this Court has a grave doubt about whether the admission of petitioner's illegally obtained confession was harmless.

The Michigan Court of Appeals' refusal to render inadmissible statements taken from petitioner after he had exercised his right to have an attorney present is an unreasonable application of <u>Miranda,</u> which would justify habeas relief. See <u>Dixon v. Houk,</u> 627 F. 3d 553, 558 (6th Cir. 2010).  Petitioner is therefore entitled to a new trial in the state courts without his confession being used against him in evidence. See <u>Jackson v. Denno,</u> 378 U.S. 368, 394 (1964).

## IV.  <u>ORDER</u>

The petition for writ of habeas corpus is **GRANTED**.  **UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHOUT THE USE OF PETITIONER'S ILLEGALLY OBTAINED CONFESSION WITHIN NINETY DAYS OF THE DATE OF THIS OPINION, HE MAY APPLY FOR A WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY FORTHWITH**.


Date:   March 17, 2015                              s/Marianne O. Battani
                                                    MARIANNE O. BATTANI
                                                    United States District Judge

16

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 17, 2015.

s/ Kay Doaks
Case Manager